UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

BRISTOL-MYERS SQUIBB CO.,

        Petitioner,

        v.

NOVARTIS PHARMA AG,

        Respondent.

------------------------------------------------------------x

No. 22-cv-04162 (CM)

## MEMORANDUM DECISION AND ORDER DENYING RESPONDENT'S MOTION TO SEAL THE FINAL ARBITRATION AWARD

McMahon, J.:

On May 20, 2022, Petitioner Bristol-Myers Squibb Co. ("BMS") filed a petition to confirm the final award that was entered in a binding arbitration between BMS and Novartis on June 16, 2021. (Dkt. No. 1).

On May 23, 2020, Respondent Novartis Pharma AG's ("Novartis") filed an unopposed motion to seal the final arbitration award in its entirety – or, in the alternative, requested leave to file a heavily redacted version of the award.

For the following reasons, Novartis' motion to seal the final award is DENIED; Novartis' request to file a redacted version of the final award is also DENIED except to the extremely limited extent described below.

## PROCEDURAL BACKGROUND

### 1. The Arbitration

On March 19, 2019, Novartis filed a Demand for Arbitration at the International Centre for Dispute Resolution, naming BMS as the sole respondent. Novartis sought, *inter alia*, a declaration that Novartis' obligation to make certain royalty payments under provisions of the parties' November 6, 1998 "Evaluation, Research and Commercialization Agreement" was unenforceable as illegal, that no further payments were due, and that BMS was required to repay certain royalties to Novartis. (*See* Dkt. No. 8-2, at 4-5).

The agreement at issue provided that disputes arising thereunder would be resolved by binding arbitration in New York, New York under the current American Arbitration Association ("AAA") Commercial Arbitration Rules. The laws of New Jersey applied.

An arbitral panel was convened consisting of three distinguished retired federal judges: Hon. Garrett E. Brown, Jr. (Ret.), Hon. Faith S. Hochberg (Ret.), and Hon. Randall R. Rader (Ret.).

The panel entered a scheduling order in early 2020 and the case proceeded through discovery to summary disposition. A hearing on the parties' cross-motions for summary disposition took place in January 2021, during which the panel heard testimony from fact and expert witnesses. After the close of witness testimony, the parties submitted post-hearing briefs and the panel heard closing arguments in March 2021. The panel deemed the evidentiary record closed as of April 16, 2021.

On June 16, 2021, the panel issued a final award, dismissing Novartis' affirmative claims and requests and ordering the parties to continue their dealings as provided by the plain terms of their agreement.

## 2. Confirmation and the Effort to Keep the Award Under Wraps

Almost a year later, on May 2, 2022, BMS filed a motion for permission to file a case under seal. This application was not wheeled out to a district judge but was sent to the Part I judge for adjudication as a "Miscellaneous Application to File Civil Case Under Seal." *See ABC v. DEF*, No. 22-mc-00124, Dkt. No. 1 (S.D.N.Y. May 2, 2022).

On May 6, 2022, my colleague Judge Gardephe, sitting in Part I, denied the motion to file under seal. *See Bristol-Meyers Squibb Co. v. Novartis Pharma AG*, No. 22 Misc. 124, 2022 WL 1443319 (S.D.N.Y. May 6, 2022).

BMS' principal argument was that "sealing is appropriate solely because the parties agreed to file under seal any papers associated with an arbitration proceeding." *Id.* at *1. Judge Gardephe emphatically disagreed. He explained if Petitioner wanted to come to court, it was required to demonstrate that "'closure is essential to preserve higher values'" and present a "'narrowly tailored' sealing request" designed "'to preserve that interest.'" *Id.* (quoting *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-120 (2d Cir. 2006)). Absent such a showing – and BMS had made none – Judge Gardephe held that sealing the case was not justified. *Id.*

On May 20, 2022, BMS filed its petition publicly. The award was not attached to the petition.

On May 23, 2020, Novartis filed the instant motion to seal the final arbitration award. In its motion papers, Novartis did not inform the Court about the miscellaneous application or Judge Gardephe's ruling thereon. The court learned of Judge Gardephe's ruling while doing research relating to this motion. This is especially troubling because, in support of its application for full sealing, Novartis makes to this court essentially the same arguments that BMS made to my colleague.

3

Novartis did, however, add to its application an alternative request that was not addressed to Judge Gardephe: it sought leave to file a redacted version of the award, arguing that its proposed redactions were designed to prevent the disclosure of trade secrets and proprietary information. A copy of the proposed redacted version was attached to the motion. Eleven full pages of the 30-page award were redacted in their entirety, including nearly all of the substantive discussion in the award (*i.e.*, the result, and the reasoning that supported it). Significant redactions appear elsewhere in the document. In fact, the proposed "redacted" version of the award leaves the reader pretty much in the dark about the arbitration and the basis of the award, accomplishing essentially the same result as full sealing does.

## DISCUSSION

The public has a "'qualified First Amendment right to access'" to judicial documents and proceedings. *Lugosch*, 435 F.3d at 119 (quoting *In re New York Times Co.*, 828 F.2d 110, 113 (2d Cir. 1987)). The public also has a "common law right of public access to judicial documents [which] is firmly rooted in our nation's history." *Id.* As the Second Circuit explains, this deeply rooted right is "based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995). When judges exercise their Article III powers, they "impact upon virtually all citizens," which renders "public monitoring . . . an essential feature of democratic control" and a way to ensure the public's "confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings." *Id.*

Therefore, under both the common law and the First Amendment, "a strong presumption of access" attaches to judicial documents. *Lugosch*, 435 F.3d at 121. That presumption against

4

public access can only be overcome if sealing "*is essential* to preserve higher values" and "*narrowly tailored to preserve that interest.*" *Id.* at 120 (emphasis added).

Arbitration, by contrast, is a purely private proceeding, to which no public right of access attaches. Precisely for that reason, arbitration – whether in the original sense (the submission of a business dispute to an expert for rapid resolution, after a brief and expedited hearing shorn of the trappings of litigation) or in its more modern incarnation (what is essentially a private court that is not bound by applicable substantive law but that nonetheless decides motions, superintends the same sort of discovery for which the Federal Rules of Civil Procedure provide, and conducts trials) – has become the dispute resolution mechanism of choice for those who wish to keep the public from knowing about their business. As long as the parties confine themselves to their chosen private venue, they are free to conduct themselves under a veil of privacy.

But privacy considerations go by the board if a party comes to court in order to obtain an enforceable judgment on his award.

"Petitions to confirm arbitration awards, and their attendant memoranda of law and supporting documents, are judicial documents . . ." *See Dentons US LLP v. Zhang*, No. 21 Misc. 462, 2021 WL 2187289, at * (S.D.N.Y. May 28, 2021) (citing cases). When a party seeks confirmation of an arbitration award by a court, the award becomes a judicial document subject to the presumption of public access because the "district court is required to consider . . . the arbitration award in determining whether it should be confirmed." *See Robert Bosch GmbH v. Honewell Intern. Inc.*, No. 14 cv 9432(PKC), 2015 WL 128154, at *1 (S.D.N.Y. Jan. 6, 2015); *accord Alexandria Real Estate Equities, Inc. v. Fair*, No. 11 Civ. 3694 (LTS), 2011 WL 6015646, at *2 (S.D.N.Y. Nov. 30, 2011) (citing cases).

For that reason, Novartis' argument that the award should be sealed because the "parties, arbitrators, and the arbitral tribunal have all treated the award, in its entirety, as highly confidential and not subject to public disclosure" (Dkt. No. 8, at 2 n.1) is just plain wrong. The parties' confidentiality agreement is worth the paper on which it is written only as long as the matter remains a private matter – which is to say, only as long as no party seeks to involve the court, and through the court the Government and the people, in its resolution. Once someone comes to court, material filed in support of or in opposition to a petition to confirm an award is subject to the presumption of public access, as is the case in any other lawsuit. The fact that the "parties, arbitrators, and the arbitral tribunal have all treated the award, in its entirety, as highly confidential and not subject to public disclosure" (*id.*) is *not* an accepted justification for sealing it in an otherwise public court proceeding. *See Mut. Marine Office, Inc. v. Transfercom Ltd.*, No. 08 Civ. 10367(PGG), 2009 WL 1025965, at *5 (S.D.N.Y. April 15, 2009) ("mere existence of a confidentiality agreement" does not justify sealing); *accord Church Ins. Co. v. Ace Prop. & Cas. Ins. Co.*, No. 10 Civ. 698(RJS), 2010 WL 3958791, at *3 (S.D.N.Y. Sept.23, 2010); *Zhang*, 2021 WL 2187289, at *1.

As my colleague Judge Castel noted in *Robert Bosch GmbH*, "A party to an arbitration proceeding that is subject to confirmation proceedings in a federal court cannot have a legitimate expectation of privacy in all papers pertaining to the arbitration because the party should know of the presumption of public access to judicial proceedings" and documents. 2015 WL 128154, at *1. Although "Arbitration proceedings are premised upon the parties' private agreement and . . . [the] parties are permitted to keep their private affairs from the prying eyes of others . . . The circumstance changes when a party seeks to enforce the fruits of their private agreement to arbitrate, *i.e.* the arbitration award, in federal court." *Id.* Once in federal court, "'the public . . . has

a right to know what the Court has done.'" *Alexandria Real Estate Equities, Inc.*, 2011 WL 6015646, at *2 (quoting *Global Reinsurance Corp.-U.S. Branch v. Argonaut Ins. Co.*, Nos. 07 Civ. 8196(PKC), 07 Civ. 8350(PKC), 2008 WL 1805459, at *1 (S.D.N.Y. Aug. 12, 2010)).

The presumption of public access is strong in this case. "The weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *Amodeo*, 71 F.3d at 1049. "Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* at 1049. In weighing the presumption of access, that weight ranges from "an 'especially strong' presumption requiring 'extraordinary circumstances to justify restrictions,' to merely 'one of the interests' that may bow before 'good reasons' to deny the requested access." *Id.* at 1048 (quoting *United States v. Myers (In re Nat'l Broadcasting Co.)*, 635 F.2d 945, 952 (2d Cir.1980) and *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 434 (5th Cir. Unit A 1981)). In this case, the entire purpose of the litigation is to confirm the award, which means that the award "directly affects" the adjudication the court is being asked to make. That means the weight of the presumption of public access is strong. Novartis must provide compelling reasons to justify restricting the public's access to it.

Novartis argues that because Congress passed the Federal Arbitration Act ("FAA"), there is an "'*emphatic* federal policy in favor of arbitral dispute resolution'" (Dkt. No. 8, at 3 (quoting *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 233-234 (S.D.N.Y. 2020)), which gives rise to "policy considerations [that] favor" the confidentiality of arbitral proceedings and that justify sealing here. (*Id.*). Essentially, Novartis argues revealing arbitration details publicly "in

7

order to enforce an arbitral award" would "undermine" that "policy in favor of arbitration." (*Id.* at 4).

I most emphatically disagree.

A party who agreed to arbitrate rather than litigate a dispute should be fully prepared to abide by the arbitrators' decision and make good on an award against him; in that way, the parties' preference for confidentiality can be preserved. But in this Court's experience, there are a lot of sore losers in arbitration – and because they have chosen arbitration, they have no right to appeal an adverse decision to a higher tribunal. So they simply do not comply with the award. When that occurs, the aggrieved party is fully within its rights to come to a court of law to obtain a judgment that will allow it to enforce the award against a recalcitrant opponent. I do not know whether this is the reason BMS has sought confirmation of its award against Novartis almost a year after the award was handed down, but logic suggests that it well may be.

If the prevailing party in arbitration feels compelled to reduce its award to a judgment, its opponent should understand that the proceedings will no longer be secret, no matter what the parties have agreed. Contrary to Novartis' argument, this does not undercut the federal policy favoring arbitration, because the federal policy favoring arbitration favors only resort to alternative dispute resolution – not confidentiality agreements attendant thereto. There is no "FAA exception" to the public's right of access to judicial documents, whether that right arises under First Amendment or is "firmly rooted" in the common law. *See* 9 U.S.C. § 1, *et seq.* and 9 U.S.C. § 201 *et seq.* Any argument to the contrary is utterly unpersuasive -- which may explain why Novartis cites not a single authority in support thereof.

I also remind the parties that this court is not a party to any confidentiality agreement they have made with themselves or the arbitrators. I am bound to perform my duties openly and

8

publicly. BMS wants to be able to enforce its award; it filed a lawsuit; the matter perforce becomes a public matter. Novartis, a sophisticated party, cannot claim to have been surprised by this development, since this has always been the law – even if courts have on occasion winked at the law and mistakenly allowed confirmation proceedings to be conducted under seal.

Finally, Novartis argues that sealing the final award is essential to preserve "higher values" because the award contains certain private information that cannot be revealed: specifically, (1) "proprietary information regarding the parties' research and development of the products involved in the dispute and the underlying technology used to develop those products"; (2) "confidential business information that would reveal information concerning their contracting practices and bargaining positions, which would potentially harm the parties relative to competitors and other market participants in any future negotiation"; and (3) "sensitive information regarding Novartis's products at issue and the Biologics License Applications for those products, which include proprietary information about the properties and characteristics of the products." (Dkt. No. 8, at 3). To protect that information, Novartis argues that the Court should seal the final award in total or allow it to be filed in a heavily redacted form. (*See* Dkt. No. 8-3).

In many commercial lawsuits, courts are confronted with requests to seal documents that contain trade secrets and proprietary information – "information that is not publicly known, and is only disclosed on a limited basis within the company," such as revenue information, internal analyses, business or marketing plans, insurance coverage information, price lists or pricing information, sales and costs information, merger discussions, and product testing. See *W.J. Deutsch & Sons Ltd. v. Diego Zamora, S.A.*, No. 21-cv-11003 (LTS), 2022 WL 890184, at *2-3 (S.D.N.Y. Mar. 25, 2022) (citing cases). When a party points out that a judicial document contains such information and offers good reason why that information should remain confidential, courts

routinely engage in sealing – limited, of course, to what actually qualifies as proprietary information or trade secrets. The mere mention of proprietary information or trade secrets in a judicial document affords no basis to seal that document in its entirety, as Novartis asks this court to do; that is not a "narrowly tailored" request. Novartis' motion to seal the award in its entirety on the ground that it contains such information is, therefore, denied.

The question then becomes whether there is any portion of the award that should be sealed (redacted) in order to preserve these "higher values." Novartis has proposed sealing most of the award, arguing that it contains trade secrets and proprietary information. The court must rule, essentially on a line-by-line basis, on the proposed redactions, so that only those actually hiding trade secrets or proprietary information are allowed.

Predictably, much of what Novartis has proposed be redacted is not proprietary or confidential business information and so must be publicly disclosed. Specifically:

- Final Award pages 4-5: Novartis proposes redaction of the panel's statement of the issue in the arbitration. However, the subject matter of the arbitration is not a trade secret or confidential business information, as those terms have been defined (*see supra*, at page 9), so it may not be redacted. *See W.J. Deutsch & Sons Ltd.*, 2022 WL 890184, at *2-3 (S.D.N.Y. Mar. 25, 2022) (citing cases).

- Final Award page 8: Novartis proposes redaction of the identity of witnesses who testified in the arbitration. The identity of the witnesses who were called to testify at the arbitration hearing is not a trade secret or proprietary business information, as those terms are understood (again, *see supra*, at page 9). Therefore, the names may not be redacted.

- Final Award pages 10-11: Novartis proposes redacting the arbitral panel's discussion of the law applicable to the case – specifically its discussion of the Supreme Court's decisions in

10

*Brulotte v. Thys Co.*, 379 U.S. 29 (1964) and *Kimble v. Marvel Entertainment LLC*, 135 S. Ct. 2401, 2405 (2015)). There is no trade secret or proprietary business information in a discussion of the law being applied to the dispute. It may not be redacted.

- Final Award pages 13-14: Novartis proposes redacting historical information about Dr. Nils Lonberg, "HuMAb" mice, and Medarex's licensing of the mice. However, this historical information is available in the public domain (via public internet search engines), and some of it is undoubtedly available in BMS' patents, which must be publicly available. What might be proprietary to BMS – the actual technical information about how the mice were engineered – is not discussed in the award, so what appears in the opinion is anything but confidential or proprietary. It is, rather, well-known fact. It may not be redacted.

- Final Award pages 17-28: Novartis proposes redaction of these eleven pages almost in their entirety. These pages contain a discussion of the parties' performance under the agreement and the panel's discussion of how the law applies to the facts of the case. Only a small portion of this information qualifies as a trade secret or proprietary information. The Court agrees that sales amounts found on page 17 can be redacted as confidential business information. Similarly, the royalty information contained in the award is presumptively proprietary, and the Court would ordinarily consent to seal it. However, while Novartis proposes to redact royalty-related information where it appears on pages 20, 22-23, 25-26, and 28, it failed to redact the same information on page 16. I am going to guess that this represents bad proofreading, rather than a concession that the royalty rates and amounts are not proprietary. Novartis has until June 22, 2022 to advise the court whether it wants royalty-related information redacted in all places where it appears, or not at all. The rest of the discussion contained in pages 17 through 28 may not be redacted. This is the part of the award to which the presumption attaches most strongly,

since it will anchor the court's decision on whether the award should be confirmed. Beyond the sales amounts and royalty information, the only thing appearing in these pages that Novartis identifies as confidential or proprietary are its "contracting practices and bargaining positions"; it argues that disclosure of this information could "potentially" disadvantage them in future negotiations. But that is like saying that the battle plans for the Battle of Gettysburg would, if disclosed, "potentially" disadvantage the U.S. Armed Forces in a twenty-first century war. The contracts at issue in this case were signed over two decades ago. Negotiations and positions might well have been confidential back in 1997 and 1998, when discussions were ongoing, but Novartis does not explain how these ancient matters would or could prove useful to its competitors in 2022 and beyond. Simply saying that competitors could exploit these historic positions and negotiations, without explaining how they actually might do so, is pure *ipse dixit*; conclusory assertions that fail to overcome the strong presumption of public access in this case.

- Final Award p. 29: Novartis seeks to redact the amount of the award that BMS seeks to confirm. The amount of the award obtained in the arbitration is not a trade secret or confidential business information; the court would have to seal the judgment in order to keep the amount of the award secret, and I will not do so. It may not be redacted.

## CONCLUSION

Novartis's motion to seal the final arbitration award is DENIED. Novartis' alternative request to file a redacted version of the final award is also DENIED except to the extent of allowing it to redact the sales amounts found on page 17 of the award. Novartis has until June 22, 2022 to inform the Court whether it wants the royalty information redacted where it appears at pages 16, 20, 22-23, 25-26, and 28. To that limited extent, the motion is GRANTED.

The clerk is respectfully directed to close the open motion at Docket Number 7.

This constitutes the decision and order of the Court. It is a written opinion.

Dated: June 14, 2022

                                                 U.S.D.J.

BY ECF TO ALL COUNSEL